## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MIKHAIL TABAK,
an individual,

                                                        Case No.:

       Plaintiff,

v.

CAPITAL ONE,
NATIONAL ASSOCIATION,
a national association,
EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
TRANS UNION LLC,
a foreign limited liability company,

       Defendants.

_____/

### PLAINTIFF'S NOTICE OF LEAD COUNSEL DESIGNATION

Plaintiff, MIKHAIL TABAK, by and through the undersigned counsel, pursuant to Middle District of Florida Local Rule 2.02(a), hereby designates Aaron M. Swift, Esq. as Lead Counsel for Plaintiff.

### COMPLAINT

**COMES NOW**, Plaintiff, MIKHAIL TABAK (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint against Defendants, CAPITAL ONE, NATIONAL ASSOCIATION (hereinafter, "Capital One"), EQUIFAX INFORMATION SERVICES LLC (hereinafter, "Equifax"),

EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"), and TRANS UNION LLC (hereinafter, "Trans Union") (hereinafter collectively, "Defendants").  In support thereof, Plaintiff states:

<u>**PRELIMINARY STATEMENT**</u>

1.      This is an action brought by an individual consumer for damages for Capital One's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein Capital One improperly credit-reported and subsequently improperly verified its credit reporting of an alleged balance owed on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Equifax, Experian, and Trans Union that was created or allegedly incurred as a result of identity theft and fraud.  More specifically, despite Plaintiff advising Capital One that he did not open the alleged account, did not use the alleged account, and did not benefit from the account in any way —and after Plaintiff disputed Capital One's reporting of such erroneous information directly to Equifax, Experian, and Trans Union—Capital One *continued* to report such account with a significant fraudulent, balance due and past-due.

2.      Furthermore, this is an action for damages for Equifax's, Experian's, and Trans Union's violations of the FCRA wherein Equifax, Experian, and Trans Union each continued to incorrectly report Plaintiff as the individual responsible for the alleged balance on the Capital One account after Plaintiff disputed and advised that any balance allegedly owed was a result of identity theft and fraud, and after Plaintiff provided information to Equifax, Experian, and Trans Union in support of his dispute,

including but not limited to an FBI identity theft affidavit.

## JURISDICTION, VENUE & PARTIES

3.      Jurisdiction of this Court arises under 28 United States Code, Section 1331, pursuant to the FCRA, 15 United States Code Section 1681, et seq.

4.      Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

5.      Venue is proper in this District as the acts and transactions described herein occur in this District.

6.      At all material times herein, Plaintiff is a natural person residing in Sarasota County, Florida.

7.      At all material times herein, Capital One is a national association with its principal place of business located at 1680 Capital One Drive, McLean, Virginia 22102.

8.      At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of business located at 1550 W Peachtree Street, Atlanta, Georgia 30309.

9.      At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

10.     At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

11.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

12.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

13.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

14.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer.  *Id.* at § i(a)(4).

15.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete,

or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

16.     Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

17.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

18.     Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer

as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## GENERAL ALLEGATIONS

19.    At all material times herein, Plaintiff is an alleged "consumer" as defined by the FCRA, Section 1681a(c) because he is an individual and allegedly obligated to pay a debt.

20.    At all material times herein, Capital One, itself and through its subsidiaries, regularly extends credit cards—and credit reports debts associated with the same—allegedly owed by consumers residing in Sarasota County, Florida.

21.    At all material times herein, Capital One furnishes information to Equifax, Experian, and Trans Union concerning an alleged delinquent balance on a consumer credit card account that was created as a result of identity theft and fraud, referenced by account number ending -5866 (hereinafter, the "Alleged Debt" or the "Account").

22.    At all material times herein, Plaintiff did not authorize any individual or entity to open the Account in his name, Plaintiff did not use the Account in any manner, and Plaintiff did not receive the benefit of any good or services as a result of any transactions made creating the Alleged Debt.

23.    At all material times herein, Capital One is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

24.    At all material times herein, Equifax, Experian, and Trans Union are

each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Equifax, Experian, and Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

25.    At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

26.    All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

27.    In 2022, Plaintiff's personal information was obtained by unknown third-parties as a result of a data breach, and Plaintiff received notice of such data breach from Independent Living Systems in March 2023.

28.    During or about 2022, an unknown third-party filed for unemployment benefits in Plaintiff's name and without Plaintiff's knowledge or consent related to tax year 2021.

29.    Such benefits were allegedly associated with an address in Glendale, California.

30.    Plaintiff has never resided in Glendale, California.

31.    Since 2017, Plaintiff has resided in Sarasota, Florida.

32.    After Plaintiff received notice of his tax liability for tax year 2021 related

to the fraudulent unemployment benefit earnings, Plaintiff submitted an affidavit to the IRS denying knowledge or authorization of the unemployment benefits application.

33. On or about February 7, 2024, the IRS confirmed that Plaintiff was the victim of identity theft and fraud, and the IRS removed the disputed unemployment earnings from Plaintiff's tax liability for tax year 2021.

34. During or about February 2024, Plaintiff started working with Community Solutions 360, Inc. because Plaintiff was and is interested in purchasing a home, and needed a mortgage loan.

35. As part of the loan application process, Plaintiff authorized Community Solutions 360, Inc. to obtain Plaintiff's credit reports.

36. On or about February 13, 2024, Community Solutions 360, Inc. obtained Plaintiff's tri-merge credit report via Equifax Mortgage Solutions.

37. At this time, Plaintiff learned for the first time that Capital One was reporting an account (i.e., the Account) to Equifax, Experian, and Trans Union.

38. More specifically, Capital One, Equifax, Experian, and Trans Union reported the Account as opened in August 2022, as belonging to Plaintiff with a balance past-due, and as charged-off with late payment history.

39. To the extent the Account was opened by an individual or entity, such individual or entity opened the Account without Plaintiff's consent, knowledge, or approval.

40. As such, the  Account was opened in Plaintiff's name as a result of

identity theft and fraud.

41.    Plaintiff and Plaintiff's legal counsel, Gulfcoast Legal Services, repeatedly contacted Capital One and advised that the Account was opened as a result of identity theft and fraud.

42.    Throughout the course of communicating with Capital One, Plaintiff discovered that the Account was opened using an address in Glendale, California— where Plaintiff has never lived—and opened using a telephone number that does not belong to Plaintiff.

43.    After Plaintiff learned of the fraudulently opened Capital One Account, Plaintiff also filed a report with the Federal Bureau of Investigation regarding the fraudulent Capital One Account.

44.    On or about June 7, 2022, Plaintiff sent an identical letter to Equifax, Experian, and Trans Union, respectively, disputing Defendants' reporting of the Account (hereinafter, "First Dispute").

45.    More specifically, Plaintiff's First Dispute advised that Plaintiff did not open the Account, requested that Defendants investigate, and requested that Defendants delete their reporting of the Account.

46.    Plaintiff also enclosed a copy of his IRS Affidavit, a letter from the IRS confirming Plaintiff was a victim of ID Theft and Fraud, Plaintiff's FBI Affidavit and ID Theft Report, his Florida Driver's License, his 2023 IRS Tax Return showing Plaintiff's full SSN, and a utility bill dated 06/03/2024 showing Plaintiff's current address in support of his First Dispute.

47.    On or about June 11, 2024, Trans Union received Plaintiff's First Dispute.

48.    On or about June 12, 2024, Experian received Plaintiff's First Dispute.

49.    On or about June 21, 2024, Equifax received Plaintiff's First Dispute.

50.    Plaintiff did not receive any communications from Equifax, Experian, and Trans Union in response to his First Dispute.

51.    In July 2024 and August 2024, Plaintiff obtained copies of his credit reports from Equifax, Experian, and Trans Union, respectively.

52.    Despite Plaintiff's First Dispute, Defendants each continued to report the Account as past-due, continued to report late payments on the Account, and reported the Account as charged off, resulting in the Account appearing as a derogatory account on Plaintiff's credit reports and in Plaintiff's credit files.

53.    Defendants' reporting of the Account as owed by Plaintiff personally is inaccurate because Plaintiff did not open the Account and therefore the Account must have been opened as a result of identity theft and fraud.

54.    Furthermore, Defendants' reporting of historical or current late payment information is inaccurate because any alleged balance owed was the result of identity theft and fraud, and therefore, Plaintiff could not be late or past-due on a balance he does not owe.

55.    Reporting Plaintiff as the individual responsible for the Capital One Account is materially misleading because Plaintiff did not authorize anyone to apply for the Account in his name and did not receive the benefit of any transactions made

using the Account.

56.    Moreover, despite Plaintiff's previous dispute, Equifax failed to mark the Account as disputed by Plaintiff as of July 2023.

57.    On or about August 30, 2024, Plaintiff sent *another* letter to Equifax, Experian, and Trans Union, with the assistance of his attorneys, *again* disputing Defendants' reporting of the fraudulent Capital One Account (hereinafter, "Second Dispute").

58.    More specifically, Plaintiff's Second Dispute *again* advised Equifax, Experian, and Trans Union that Plaintiff did not open the Account, advised that an unknown third party must have opened the Account in Plaintiff's name without his knowledge or approval, advised that Plaintiff filed an FBI report regarding the identity theft and fraud on the Account.

59.    Plaintiff *again* enclosed a copy of his IRS Affidavit, a letter from the IRS confirming Plaintiff was a victim of ID Theft and Fraud, Plaintiff's FBI Affidavit and ID Theft Report, his Florida Driver's License, his 2023 IRS Tax Return showing Plaintiff's full SSN, and a utility bill showing Plaintiff's current address in support of his Second Dispute.

60.    Equifax received Plaintiff's Second Dispute.

61.    Equifax communicated Plaintiff's Second Dispute to Capital One including all enclosures.

62.    Capital One received notice of Plaintiff's Second Dispute from Equifax.

63.    Experian received Plaintiff's Second Dispute.

64.    Experian communicated Plaintiff's Second Dispute to Capital One including all enclosures.

65.    Capital One received notice of Plaintiff's Second Dispute from Experian.

66.    Trans Union received Plaintiff's Second Dispute.

67.    Trans Union communicated Plaintiff's Second Dispute to Capital One including all enclosures.

68.    Capital One received notice of Plaintiff's Second Dispute from Trans Union.

69.    Experian failed to respond to Plaintiff's Second Dispute.

70.    On or about September 3, 2023, Trans Union sent a letter to Plaintiff in response to Plaintiff's Second Dispute, asserting that Trans Union could not process Plaintiff's dispute with the information provided and requesting further identifying documentation.

71.    On or about September 9, 2023, Equifax sent a letter to Plaintiff in response to Plaintiff's Second Dispute, similarly asserting that Equifax could not process Plaintiff's dispute with the information provided and requesting further identifying documentation.

72.    Again, Trans Union and Equifax each received Plaintiff's First Dispute and Second Dispute, which enclosed a copy of his IRS Affidavit, a letter from the IRS confirming Plaintiff was a victim of ID Theft and Fraud, Plaintiff's FBI Affidavit and ID Theft Report, his Florida Driver's License, his 2023 IRS Tax Return showing Plaintiff's full SSN, and a utility bill showing Plaintiff's current address in support of

his Second Dispute.    Further, Plaintiff's First Dispute and Second Dispute clearly identified Plaintiff's full name, addresses, date of birth, and last four digits of Plaintiff's Social Security number.

73.    On or about October 16, 2024—despite previously providing documentation to corroborate his identity—Plaintiff sent additional identifying documents to Equifax with the assistance of his attorneys, including recent paystubs, a recent utility bill, the first page of Plaintiff's 2023 Tax Return and a copy of Equifax's letter requesting the additional information.

74.    Likewise, on or about October 16, 2024, Plaintiff sent additional identifying documents to Trans Union with the assistance of his attorneys, including his Florida driver's license, his USA passport, recent paystubs, and a recent utility bill.

75.    On or about October 25, 2024, Equifax sent *another* letter to Plaintiff despite receiving the additional identifying documents, claiming Equifax *still* could not identify Plaintiff with the information provided and requesting further identifying documentation.

76.    Plaintiff did not receive any results from Equifax regarding his Second Dispute.

77.    Plaintiff did not receive any results from Trans Union regarding his Second Dispute.

78.    On or about November 14, 2024—and because he did not receive dispute results from the credit reporting agencies—Plaintiff obtained copies of his credit reports from Equifax, Experian, and Trans Union, respectively.

79.    Despite Plaintiff's Second Dispute, which Plaintiff's Equifax, Experian, and Trans Union report each indicate was received and processed despite Plaintiff not receiving any dispute results, Defendants each continued to report the Account with a past-due balance of $2,436, continued to report late payments on the Account, and reported the Account as charged off, resulting in the Account appearing as a derogatory account on Plaintiff's credit reports and in Plaintiff's credit files.

80.    Defendants' reporting of the Account as owed by Plaintiff personally is inaccurate because Plaintiff did not open the Account and therefore the Account must have been opened as a result of identity theft and fraud.

81.    Furthermore, Defendants' reporting of historical or current late payment information is inaccurate because any alleged balance owed was the result of identity theft and fraud, and therefore, Plaintiff could not be late or past-due on a balance he does not owe.

82.    On or about October 3, 2023, Plaintiff sent *another* dispute letter (hereinafter, "Third Dispute") to Equifax, Experian, and Trans Union, with the assistance of his attorneys, *again* disputing the fraudulent Capital One Account to Defendants.

83.    More specifically, Plaintiff's Third Dispute *again* advised Defendants that the Account did not belong to Plaintiff because it opened as a result of identity theft and fraud, and *again* requested that Defendants delete the Account from Plaintiff's credit reports and credit files.

84.    Furthermore, Plaintiff's Third Dispute again included his full names,

addresses, date of birth, last four digits of his Social Security number, IRS fraud affidavit, IRS letter confirming Plaintiff was the victim of fraud, the FBI affidavit and identity theft report, a tax return showing Plaintiff's full Social Security number, recent paystubs showing Plaintiff's current address, and a recent utility bill showing Plaintiff's current address.

85.    Equifax received Plaintiff's Third Dispute.

86.    Experian received Plaintiff's Third Dispute.

87.    Trans Union received Plaintiff's Third Dispute.

88.    On or about December 2, 2024, Equifax sent a letter to Plaintiff advising that Equifax previously investigated Plaintiff's prior disputes, Equifax verified its reporting of the Account with Capital One, and Equifax would not process Plaintiff's Third Dispute.

89.    Merely seven (7) days later, on December 9, 2024, Equifax sent a letter to Plaintiff's attorney advising that Equifax was unable to locate Plaintiff's credit file and Equifax requested the same identifying documents Plaintiff provided to Equifax no less than three (3) times.

90.    Experian failed to respond to Plaintiff's Third Dispute.

Trans Union failed to respond to Plaintiff's Third Dispute.

91.    After Plaintiff's First Dispute, Equifax, Experian, and Trans Union each prepared and published Plaintiff's credit information to his current creditors and potential lenders which included the Account as an outstanding, past-due account obligation and as charged off, resulting in the Account appearing as a derogatory

account on Plaintiff's credit reports and negatively impacting Plaintiff's credit scores.

## DAMAGES

92.    As a result of Defendants' reporting of the Account, Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that he would be denied credit as a result of the erroneous and incorrect reporting of the Account asserted as owed by him personally if he needed to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event he could obtain financing.

93.    More specifically, Plaintiff was deterred from making further efforts to apply for credit—including a mortgage loan—because he knew he would either be denied or would not receive the best possible credit terms.

94.    In fact, in August 2024, Community Solutions 360 sent a letter to Plaintiff advising Plaintiff that he would not be approved for a mortgage loan due to the charged-off Capital One Account on Plaintiff's credit reports and advising "[u]ntil you resolve this situation, no mortgage banker/lender would approve you for a mortgage."

95.    As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account with a balance past-due, he did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

96.    Overall, Plaintiff suffered damage to his reputation as a result of Defendants' conduct.

97.    Further, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Defendants that he did not open the Account including supplying Defendants with supporting documentation, Plaintiff must simply endure Defendants' reporting of the Account.

98.    Plaintiff retained Swift Law, PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

## COUNT ONE:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)
### (As to Capital One Only)

Plaintiff re-alleges paragraphs one (1) through ninety-eight (98) as if fully restated herein and further states as follows:

99.    Capital One is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Equifax, Experian, and TransUnion delete the Account from Plaintiff's credit reports and credit file after re-investigating Plaintiff's repeated disputes.

100.    As described above,  Plaintiff was not and is not personally liable for the Account, because: (i) Plaintiff did not personally apply for the Account or open the Account; (ii) Plaintiff did not authorize any person to open  the Account in Plaintiff's name or on Plaintiff's behalf; (iii) Plaintiff did not receive the benefit of any money, goods, or services from any charges or transactions made using the Account; and (iv) Plaintiff completed an FBI affidavit and identity theft report.

101.    Despite Plaintiff not being responsible for the Account, and despite Capital One receiving notice of Plaintiff's disputes from Equifax, Experian, and Trans Union, Capital One willfully and/or negligently failed to request that Experian, Equifax, and TransUnion delete the tradeline associated with the Account and continued to report derogatory, late payment information to Experian, Equifax, and TransUnion including as significantly past-due and charged off.

102.    Between June 2024 and November 2024, Plaintiff repeatedly disputed Capital One's reporting of the Account to Equifax, Experian, and Trans Union, and the credit reporting agencies forwarded Plaintiff's disputes to Capital One.

103.    The documents Plaintiff enclosed in support of his disputes included an FBI affidavit and identity theft report.

104.    In response to Plaintiff's disputes, despite Capital One receiving notice of Plaintiff's disputes—including disputes directly from Plaintiff and his attorneys—Capital One failed to request that Equifax, Experian, and Trans Union delete the Account from Plaintiff's credit reports and credit files.

105.    Instead, Capital One purportedly verified and/or updated its reporting of

the Account including significant balances due and significantly past-due, with derogatory payment history, and as charged off.

106.    Capital One's refusal to request that Equifax, Experian, and Trans Union update their reporting of the Account as Plaintiff requested was intentionally, willfully, and knowingly done as Capital One clearly possessed knowledge that the Account was opened due to identity theft and fraud.

107.    More specifically, Capital One knew that the address and phone number used to open the Account did not and do not belong to Plaintiff.

108.    Capital One's re-investigations were not conducted in good faith.

109.    Capital One's re-investigations were not conducted reasonably.

110.    Capital One's re-investigations were not conducted using all information and documents reasonably available to Capital One.

111.    As a result of Capital One's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he was informed he would not qualify for a mortgage loan as long as Capital One continued reporting the Account, believed he would not be able to obtain favorable credit terms as a result of Capital One's derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires.

112.    Capital One's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

113.   Capital One's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(As to Equifax, Experian, and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through ninety-eight (98) as if fully restated herein and further states as follows:

114.   Equifax, Experian, and Trans Union are each subject to, and each violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

115.   Equifax, Experian, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports with respect to the Capital One Account.

116.   Specifically, despite Plaintiff *repeatedly* advising Equifax, Experian, and Trans Union that Plaintiff did not open the Account, did not authorize any other person to open the Account in his name or on his behalf, did not make any charges on the Account, did not receive the benefit of any money, goods, or services obtained as

a result of any transactions or charges made on the Account—and therefore, the Account was opened as a result of identity theft and fraud—Experian, Equifax, and TransUnion each continued to report the Account as charged-off, with a balance past-due, and with fraudulent derogatory payment history resulting in the Account being reported as a derogatory, negative, or adverse account in Plaintiff's credit reports and credit files.

117.    Further, Experian, Equifax, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in his Experian, Equifax, and TransUnion credit reports and credit files.

118.    For example, despite Plaintiff's repeated disputes including documents to corroborate that he was the victim of identity theft and to corroborate Plaintiff's identity, Equifax, Experian, and Trans Union each failed to request documents from Capital One in support of Capital One's reporting of the Account.

119.    Despite Plaintiff notifying Equifax, Experian, and Trans Union of their reporting errors and providing documents in support of his disputes, Equifax, Experian, and Trans Union each continued to report the Account with a past-due, charged off balance.

120.    Furthermore, following Plaintiff's First Dispute, Equifax failed to mark the Account as disputed.

121.    As a result of Equifax's, Experian's, and Trans Union's conduct, actions,

and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he knew he would not be able to qualify for a mortgage loan or obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

122.    Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

123.    Equifax's, Experian's, and Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i** *et seq.*
**(As to Equifax, Experian, and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through ninety-eight (98) as if fully restated herein and further states as follows:

124.    Experian, Equifax, and Trans Union are each subject to, and each

22

violated the provisions of, 15 United States Code, Section: 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and 1681i(a)(5) by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

125.    Specifically, Equifax, Experian, and Trans Union each willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

126.    Overall, Plaintiff's disputes provided Equifax, Experian, and Trans Union with sufficient information and supporting documentation allowing Equifax, Experian, and Trans Union to identify that the alleged balance owed on the Account was created as a result of identity theft and fraud, and therefore, should be deleted and removed from Plaintiff's credit reports and credit files.

127.    For example, despite Plaintiff's repeated disputes including the identity theft police report information, Equifax, Experian, and Trans Union each failed to request documents from Capital One in support of Capital One's reporting of the Account.

128.    Following each of Plaintiff's disputes, Equifax, Experian, and Trans Union continued to report the Account in Plaintiff's credit reports and files with a

significant balance due as well as derogatory, late payment information.

129. Furthermore, following Plaintiff's First Dispute, Equifax failed to mark the Account as disputed.

130. Given that Plaintiff did not personally open the Account, did not authorize anyone to open the Account in his name, and did not benefit from the Account in any way, and given that Equifax, Experian, and Trans Union did not request any documents from Capital One supporting Capital One's reporting of the Account, Equifax, Experian, and TransUnion could not reasonably verify that Plaintiff is personally responsible for the balance allegedly owed on the Account.

131. As such, Equifax's, Experian's, and Trans Union's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and each failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

132. Such reporting is false and evidences Equifax's, Experian's, and Trans Union's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

133. Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiff's disputes were not conducted reasonably.

134. Equifax's, Experian's, and Trans Union's reinvestigations merely copied and relied upon the inaccurate information conveyed by Capital One.

135. Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiff's disputes were not conducted in good faith.

136. Equifax's, Experian's, and Trans Union's reinvestigation procedures are

unreasonable.

137.    Equifax's, Experian's, and Trans Union's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Equifax, Experian, and Trans Union.

138.    Equifax's, Experian's, and TransUnion's failure to review and reasonably consider all information received in Plaintiff's disputes—which clearly showed the alleged balance was created as a result of identity theft and fraud—was done in bad faith.

139.    Equifax's, Experian's, and Trans Union's reinvestigations were *per se* deficient by reason of these failures in Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiff's disputes and the Account.

140.    As a result of Equifax's, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he knew he would not be able to qualify for a mortgage loan or obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

141.    Equifax's, Experian's, and TransUnion's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages,

and harm to Plaintiff as stated herein.

142.    Equifax's, Experian's, and TransUnion's actions in violation of 15 United States Code, Section 1681i *et seq*., constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.    Judgment against Capital One, Equifax, Experian, and Trans Union for maximum statutory damages for violations of the FCRA;

b.    Actual damages in an amount to be determined at trial;

c.    Compensatory damages in an amount to be determined at trial;

d.    Punitive damages in an amount to be determined at trial;

e.    An award of attorney's fees and costs; and

f.    Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—

pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Aaron M. Swift*

**Aaron M. Swift, Esq., FBN 0093088**
Jordan T. Isringhaus, Esq., FBN 091487
Sean E. McEleney, Esq., FBN 0125561
11300 4th Street North, Suite 260
St. Petersburg, FL  33716
Phone: (727) 490-9919
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
jmurphy@swift-law.com
*Co-Counsel for Plaintiff*

*~and~*

**GULFCOAST LEGAL SERVICES, INC.**

*/s/ Sara M. Jones*

**Sara M. Jones, Esq., FBN 1015334**
1101 Tamiami Trail S., Suite 207
Venice, FL 34285
Phone: (941) 746-6151 ext. 272
Fax: (727) 231-0935
saraj@gulfcoastlegal.org

Haley M. Brown, Esq., FBN 1054175
501 1st Ave N., Ste. 260
St. Petersburg, FL 33701
Phone: (727) 821-0726 ext. 221
haleyb@gulfcoastlegal.org
*Co-counsel for Plaintiff*